Good morning, Your Honors. The police of the court, Aaron Tiller, appearing on behalf of the appellant, Truman Thompson. Your Honors, I did receive a notice from the clerk regarding a procedural issue, and I wanted to address that initially. The appeal here is from the entry of the default. Yes, Your Honor. Not the judgment. Yes, Your Honor. And I did receive the notice from the clerk regarding whether this court has jurisdiction under 28 U.S. Code Section 1291. Your Honor, we believe that this court, the actual appeal, we will concede from the appellant's perspective that it was filed prematurely, that it was an interlocutory order which was appealed. I believe it was proper under 158 to be appealed from the bankruptcy court to the district court. However, the appeal to this court from the district court was premature. However, Your Honor, I believe that subsequent to the filing of the notice of appeal, there has subsequently been a final judgment entered on the record. It was entered September 11, 2014 as docket number 107 for a full and final judgment for $441,003.22 was the final judgment. That was the default judgment which was entered. There is extensive case law in the Ninth Circuit where, inciting to Baker v. Limber, U.S. v. Real Property, Beverly Hills, Anderson v. Allstate, and so on, where when a party appeals a judgment but does not get Rule 54 certification, when there's ultimately other co-defendants and other parties still out, still in the case that have not had a final ruling as to all parties, this court has ruled that if the notice of appeal was filed and subsequent to the notice of appeal, there is a final ruling as to all parties and, therefore, the final judgment that this court does have appropriate jurisdiction. You didn't – there was no notice of appeal filed after the entry of the default judgment. There was not, Your Honor. However, as stated in Baker v. Limber, that was an analogous situation. There was a notice of appeal filed, and it was filed prematurely. But this court, under the policy reasons under 28 U.S. Code Section 1291, this court does not want to hear piecemeal appeals. You want to have all the appeals combined and consolidated and all issues heard before you in one final appeal on a final order. That is the case in this situation. There is a final judgment. There are no outstanding issues. All the issues before this court have been finalized in a final judgment, and they're here before you. I would say looking at the policy as well is when you read 28 U.S. Code Section 1291 and you look at the case law, Anderson v. Allstate, Baker v. Limber, and you read it also in conjunction with federal's appellate procedure 4A2 where a notice of filing an appeal can be put forward. All right. Why don't you get to the merits? We need to consider that, but the jurisdictional issue. I want you to address the merits. Understood. Now, Your Honor, I would like to reserve two minutes for rebuttal, if I may. This case is one where we believe the bankruptcy court abused their discretion and violated the appellant's right to due process. The record is clear from the undisputed facts that there was never a discussion with this pro se appellant regarding terminating sanctions. And in every Ninth Circuit case and Supreme Court cases, in all cases I've researched and looked on this subject, when terminating sanctions were issued, there was either, of course, they balanced the five factors and the three sub-factors in terms of the balancing test that this court has applied, but there was always either prejudice to the point where the prejudice denied the non-offending party of their right to due process, such as destruction of evidence, a refusal to attend a deposition after multiple warnings, to the point where they were obstructing the other party's right to due process. They were depriving them of evidence. They were depriving them of their ability to gather discovery. That was not the case here. Well, in November, he was before the bankruptcy court and did get warned and admonished that it was important to follow court orders and show up at the next hearing, right? Well, Your Honor... Why wasn't that warning enough? Well, Your Honor, we did address that in our reply brief, and if you see, if you look at the full quotation from what the bankruptcy court judge stated, she said, Mr. Thompson, bad things can happen to people who don't show up to hearings, such as court dates get set without your input. I believe that that's clearly when read in the full context, that cannot be interpreted as a clear warning, especially to a pro se litigant, that you will get terminating sanctions if you do not show up to this next hearing. And the case that I think is clearly on point here is Fairfurs v. Caviar. It's a 2009 Ninth Circuit case. And in that situation, the court overturned an order for terminating sanctions, and we cited to that case on page 31 of our opening brief. In that situation, the Ninth Circuit overturned a ruling issuing terminating sanctions because the district court judge did not specifically discuss lesser sanctions, and there was no finding of true prejudice. And when I speak of prejudice, I believe it was clearly erroneous. The analysis that the bankruptcy court judge did as prejudice was not what this court intended prejudice to mean. Prejudice meant that to not issue terminating sanctions, you were rewarding the bad actor and depriving the opposing party of their right to due process. Every case in which the courts have ruled there was prejudice, it was situations where they destroyed evidence. There was multiple inability to allow the other party to conduct discovery. You've made reference to that now twice, but let me ask you this. Did Mr. Thompson receive a copy of the court's pre-trial conference status order after the hearing, I guess it was in December when he didn't show up, and the court went ahead and set the pre-trial schedule? Yes. Did he get a copy of that? No. Why not? What occurred was there was an error on the clerk's part, and even though Mr. Sonnen, who was the previous bankruptcy attorney, had withdrawn, so Mr. Sonnen withdrew, I believe in October 17th, and then December 20th, Mr. Thompson failed to show up for that hearing. The bankruptcy court judge issued a scheduling order and an order threatening of terminating sanctions, and that was a clear warning. And honestly, my arguments, I believe, would be a much more uphill battle had Mr. Thompson actually received that. But as we cited to it in the excerpt of the record, clearly on the proof of service it was emailed. The judge acknowledged it later. And the judge in her order even acknowledged that he may have not gotten this because we did not send it to him. We sent it to his former counsel. So at the hearing on the motion for terminating sanctions, I don't know if you were there that day. I was the attorney. You state on the record that he knew when he came to you that he knew he had a trial in March, and the trial date was set for March 25th. How did he know that? You made that representation to the court, so I assume that it was true that he knew. Well, these facts are not actually, they possibly might be in evidence. Mr. Thompson came to my office right around December, November, with no funds to retain. All right, some of that's in the record. He did save up every penny and eventually came in. And then I checked the docket, and I wasn't tracking the case because I was not retained to be on the case. I didn't know what was going on in the case. But when he initially came in the office in a precursory initial consultation, a free consultation, I just checked the docket, said there's a trial date. And it wasn't a thorough. I personally learned of this terminating sanction motion approximately 10 days before the opposition was due when he came into my office and signed the retainer and actually retained me. And then I did a thorough review of the docket, actually paid the pacer fees to download the documents and look at them. Because they're $0.10 a page, I just looked at the docket, said, you have a trial date, you can hire me, and we can do it in March. He came in to retain me to do the trial, paid the retainer in full, flat fee retainer to go to trial. I was ready to go to trial, and all of a sudden I realized. Do we know if after this order, after pretrial status conference, if the other side mailed it to Mr. Thompson? Sometimes the other side does it. I used to always tell, give notice. I know nowadays that doesn't happen so much anymore because everything is all electronic. There's nothing in the record, Your Honor, and there's no proof of service that was filed. And there was nothing mentioned in their motion for terminating sanctions as well as at the hearing regarding sending that notice of that scheduling hearing. So under that order, what did he fail to do? In summary, the reason for the terminating sanctions was there was a deposition scheduled for December 12, 2012. Two days prior, he called informally and said, I need to retain counsel. I'm not prepared to do a depo without an attorney. And he improperly canceled it, called them. Nine days later, did not show up to the December 20 hearing. He missed it. If you look at the record during the prior hearing, she was discussing dates in January. She was discussing discovery cutoff dates. He got confused with the dates. He was pro se without an attorney. And then the third final thing that was the grounds for terminating sanctions was that the order setting the trial and setting the scheduling deadlines for trial briefs and witness lists and all pre-trial documents, which he never was served with, which was sent to his opposing counsel, he didn't comply with. I showed up. We got terminating sanctions. I filed an opposition, but ultimately the judge was convinced that the prior acts, that we wouldn't get to trial. And then that's the summary. Did she ever impose monetary sanctions for any of this? None. Okay. I'll give you a minute for rebuttal. Thank you, Your Honor. Good morning, Your Honors. Mike Wexler on behalf of Appley C&W. I think it's clear on the merits in this case that the bankruptcy court did not abuse its discretion. There were no clearly factually erroneous decisions. And on the merits of the case should be affirmed. But let me just speak briefly to the court's question about the timeliness of the appeal. As counsel reflected, a final judgment was entered in September of 2014. When the default was entered following the terminating sanctions motion, the last sentence of the court's order was, there will be further proceedings in consideration of the potential default prove-up. You can't appeal from just entry of the default. Right. There were further proceedings. Appellant's counsel attended. There was a status conference. There was an opportunity to move for a stay. There was an opportunity to object to evidence. Appellant's counsel observed the prove-up hearing in the middle of 2014. Once we got the court's questions about the timeliness of the notice of appeal. Our jurisdiction. In your jurisdiction, we found in Ray Jack Rayleigh Construction, Kennedy v. Applause, Inc., which says that a potentially premature notice of appeal can be effective if the only thing left to do is a ministerial act of entering judgment and the litigant. Was this a ministerial act when the court had to take evidence? No, it wasn't, Your Honor. There were substantial issues still to be determined. Number one, was my client's claim against Mr. Thompson valid? If it was, what is the amount of damages? And that's not the end of it. In bankruptcy, the biggest issue is. But did he have an opportunity to meaningfully participate in that prove-up hearing given that terminating sanctions were granted? He was expressly allowed the right to file objections to the evidence because the bankruptcy court made clear that this prove-up hearing is going to be based on admissible evidence. You have to submit declarations. You have to submit exhibits. And there was a time schedule for evidentiary objections to be filed. None were, and we went to judgment. The point being that there was substantial substantive work for the court to do and did do in connection with the ultimate entry of judgment. It just wasn't a ministerial act. It was not ministerial. And, in fact, the judgment entered by the court, the findings of fact and conclusions of law, which are extensive with regard to the ultimate judgment, makes reference to the possibility of further appellate activity with regard to the findings and conclusions with regard to the judgment itself. And so everybody, I anticipated that there might be a subsequent notice of appeal after the filing in service of the judgment. So that's the procedural point. Let me get to the merits and respond to a question that the court raised with regard to Mr. Thompson's conduct and what he knew. And the order setting my client's motion for hearing expressly laid out to Mr. Thompson what he needed to explain to the court. You're talking about the sanctions motion? Yes. The sanctions motion relayed that he had been dilatory in discovery, that the court had to extend the discovery cutoff several times for the benefit of my client, that his prior attorney withdrew because of his lack of cooperation, that he was there at the November 15th hearing when he was told to appear on December 20th, that in addition to being told while he was in court, he got two orders from the court that stated that within a few days after the November 15th hearing, plus he got the reminder letter from me in connection with the deposition and the subsequent hearing. And then he failed to attend that. He failed to comply with the scheduling order. The court's notice with regard to the sanctions motion said, You have to explain your prior failures to appear and to participate and respond. And his opposition did not. When I raised that at the hearing, counsel for Mr. Thompson says, Well, I have Mr. Thompson here. He can testify he didn't know about the December 20th hearing. And the court said, Don't do that. I remember telling him. And the record is clear that the order granting his former counsel's withdrawal, the last paragraph says, And the next pretrial conference order is December 20th at 9 o'clock. He knew he was there when she told him. She binded him up to the lectern and everything and said, you know. He was standing right next to us. He was orally and he told and knew about that December 20th hearing. I think the bankruptcy judge's factual determination that Mr. Thompson knew about the hearings. First of all, she knew that he had not cooperated with discovery requiring three continuance of the discovery cutoff. Had she ever ordered him, You must appear. You're ordered to appear at a deposition at 9 o'clock. And, you know, look, just be there in this day, this time, this place. She did not order to him for him to appear. But she did tell him at the November 15th hearing that. You have to appear for a deposition when we're concluded here. Go out in the hallway with Mr. Wexler and set a time for your deposition. That's still different than ordering. There was no order. But he's got an obligation as a litigant, pro se or otherwise, to participate in discovery. And he didn't do that. And the court knew that. Usually when that happens, though, the sanction is a monetary sanction. You know, you wasted everybody's time. You're going to pay. That's right, Your Honor. A thousand dollars. But in this case, that's not all that happened. He refused to appear on December 20th. The bankruptcy court determined as a factual matter that that was willful and in bad faith. Because he knew about it. He was told face to face. He got two court orders. He got the reminder letter from me. And then he didn't show up. And then following that, he gets the trial brief, my witness statements, my expert's reports. Usually the sanction was, at least as I recall, when I ever opposed sanctions. I didn't do it very often, but it was a monetary sanction to cover your cost for a useless appearance in court. The bankruptcy court determined based on the facts in the record. And let me remind the court that the order setting the terminating sanction motion for hearing said, please explain. Right. He didn't explain why he didn't show up. He didn't explain why he didn't comply with the scheduling order. And with regard to his notice of the scheduling order, there is no evidence at all in the record that he did not receive it. He never said in his opposition he didn't receive it. He never had a declaration from him. But we know that it wasn't sent to him. Mr. Soonin sent it to him, his former counsel. How do we know that? Was there a declaration in the record? There was no declaration one way or the other. By December 20th, Mr. Soonin had been out of the case for a month. The order was issued in late November, yes. The hearing was November 15th. I think the order was November 19th. Right. But the order after pretrial conference status was in December. That's correct. December 21st. And the opposition, Mr. Thompson's opposition, does not say one word about whether or not he received it. Well, we learn right now that counsel had checked the docket. Well, what the appellant's opening brief says, the court did not send notice of the scheduling order and warning regarding terminating sanctions to the appellant directly. That just means the court didn't send it to him. It doesn't mean he didn't get it. And nowhere in the record is there any statement of fact suggesting that he did not receive it. There was a pattern of conduct from day one. Usually, though, I understand the frustration of the trial judge and whatnot, want to move these things along. But terminating sanctions and striking somebody's answer and entering a default is really the ultimate sanction. It is the ultimate sanction. Usually you build up to that. You lead up to that. It was entirely appropriate in this case. And let me step back a little farther. This Chapter 7 petition was filed for one purpose only. To avoid the judgment. To avoid the judgment that my client was seeking in state court. There were no other unsecured creditors. So then we filed the adversary proceeding. We have the early conference of counsel, no documents. We seek documents. Now, former counsel is not quite my age and stage, but he'd been practicing for 30 years. I've never had another case with him, but professional, forthright. We tried to do things the simple way. It didn't work. We tried to do things through service of process. That didn't work. The court knew that. The court couldn't manage the calendar. Things kept getting continued. This is clearly a sanction authorized by the federal rules. She satisfied, the bankruptcy court judge satisfied the five-part test. There was no abuse of discretion. Her factual determinations are not clearly erroneous. And I believe, assuming the court gets to the merits, the matter should be affirmed. Okay. I'll give you a minute. Thank you, Your Honor. Your Honor, please support. I just merely want to address some points. And if you read my reply brief, if you look at page 15 and 16 and 17, I take block quotes from that November 15th hearing that I believe were misrepresented. That's not what occurred. If you read through it, the bankruptcy court judge discussed multiple dates to discuss why he didn't show up to the hearing. What efforts did he make, if any, between the time that he last appeared before the court in November and was admonished to pay attention to dates up to the time that he found out that the court was thinking about terminating sanctions? He saved every penny to hire me to defend him. And he came in, and I filed an opposition to the motion for terminating sanctions. And I came in, obviously, too late for the bankruptcy court judge. I merely want to show, I mean, the new, when he said he didn't know the December hearing, what he meant was I misunderstood. And if you read the transcript of November 15th, they were throwing out dates, January. And they kept talking about if you have an attorney, I won't make you come back. I'm going to give you more time. Well, counsel, if there is an attorney in this case, I'm going to not make him come back. And so maybe we should just put this out to January. And you have to, as I cited to in the Tenth Circuit case Westfall, this court must, well, this court not must, but I believe it's good practice to give the pro se litigants a little more leniency. He's standing here in a large federal courtroom hearing dates thrown off. And when I say he didn't know, it wasn't that he didn't know, possibly by the definition that it wasn't told in open court, that he misunderstood. And he wanted to get on the stand to explain that, and he wasn't allowed to. He was told if he gets on the stand, he's purging himself, I'm not letting him on the stand, I don't want to hear it, or something to that effect. Furthermore, the deposition, there was multiple conversations about talking about dates, pushing it out. It wasn't, there was never a set you need to attend this hearing on this date. And they kept bringing up if you get an attorney, I will move the dates, move this out. And lastly, when he talks about his behavior, there was never any motion to compel. There was never discovery, sanction motion. There's actually, and I cite to you, former counsel, before he withdrew at the hearing prior to withdrawing at the third pretrial status conference, Mr. Sutton stated, I have all the documents requested, they're in my possession, and I'm turning them over. That discovery, other than the, he did attend one deposition. He attended four pretrial status conferences. He handed all the discovery documents over to the opposing side. The only thing that needed to be done was the resumption of his deposition, the second deposition. He was then, his counsel withdrew, and after, he went to the November 15th hearing, hired new counsel in February, March, and then we came and said we're ready for trial. And I think if you really look at the record here, he misunderstood. He missed the date any minute ago. All right. Thank you, Your Honor. Thank you, Counsel. We appreciate your arguments this morning. The matter is submitted.
judges: Pregerson, Paez, Nguyen